**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | |
|---|---|
| DENNIS A. JONES, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br>   v.<br><br>UNITED COMMUNITY BANK, INC.,<br><br>        Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**CASE NO. _____** |

Plaintiff, Dennis A. Jones, on behalf of himself and all others similarly situated, sues Defendant, United Community Bank, Inc., and alleges:

## <u>INTRODUCTION</u>

1.      United Community Bank, Inc. ("UCB") operates an aggressive and predatory overdraft fee program, seeking to turn its accountholders' financial struggles into bank revenue. Mr. Jones, like thousands of others, has fallen victim to the bank's overdraft and insufficient funds fee revenue maximization scheme.

2.      For perspective, consider the brutal impact UCB's overdraft fees ("OD Fees") and insufficient funds fees ("NSF Fees") have had on Mr. Jones. Plaintiff's income is approximately $800 – 1,000 a month, and between January 2016 and April 2018, UCB has charged Mr. Jones a staggering $2,376 in OD and NSF Fees. During several months, nearly all of Mr. Jones's income was taken by UCB in OD and NSF Fees.

3.      Plaintiff seeks redress for two distinct unlawful practices that UCB perpetrates on its checking accountholders to increase OD and NSF Fees assessed. Plaintiff asserts this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated throughout the United States, for damages and other relief arising from UCB's routine practice of a) assessing OD Fees on transactions that did not overdraw checking account available balances; and b) assessing more than one NSF Fee on the same transaction.

4.     Besides being deceptive, unfair and unconscionable, the practices breach promises or implied covenants in UCB's contracts and are deceptive.

5.     Plaintiff and other UCB customers have been injured by UCB's practices.  On behalf of himself and the putative class, Plaintiff seeks damages and restitution for UCB's breach of contract and violations of state statute. Additionally, Plaintiff seeks an injunction on behalf of the general public to prevent UCB from continuing to engage in its illegal and deceptive practices.

## PARTIES

6.     Plaintiff, Dennis A. Jones, is a citizen and resident of the State of Tennessee and has had a checking account with UCB at a branch in Lenoir City, Tennessee, at all times material hereto.

7.     UCB is a bank with locations throughout Tennessee, Georgia, North Carolina, and South Carolina. UCB's headquarters and principal place of business is in Blairsville, Georgia. Among other things, UCB is engaged in the business of providing retail banking services to consumers, including Mr. Jones and members of the putative classes. UCB's Registered Agent in Tennessee is CT Corporation System located at 300 Montvue Rd., Knoxville, TN 37919.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than UCB.

9.     UCB regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to its customers, including Plaintiff

and members of the putative class. UCB also maintains its registered agent in this district. As such, it is subject to the jurisdiction of this Court.

10.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because UCB is subject to personal jurisdiction in this Court and regularly conducts business within this district through its multiple branches located within this district. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## OVERVIEW

### I.     Improper Assessment of OD Fees

#### A.     UCB's Practice

11.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from UCB. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to UCB, which verifies that the customer's account is valid and that available funds are sufficient to "cover" the transaction amount.

12.     At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, UCB immediately decrements consumers' checking accounts for the amount of the purchase and sets aside funds in a checking account to cover that specific transaction. As a result, and with limited exceptions, customers' accounts *always* have sufficient available funds to cover these transactions throughout their entire life-cycle.

13.     However, UCB still assesses $36 OD Fees on many of these transactions, in violation of its contractual promises not to do so.

14.     Despite putting aside sufficient available funds for debit card transactions, UCB charges OD Fees on those same transactions if they purportedly settle—days later—into a negative balance ("Authorize Positive, Settle Negative Transactions").

15.     Authorize Positive, Settle Negative Transactions occur because of a systemic policy maintained by UCB. UCB maintains a running account balance in real time, tracking funds consumers have for immediate use.  This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instant debit card transactions are authorized at the vendor terminal. When a customer makes a purchase with a debit card, UCB sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's account balance.   Such funds are not available for any other use by the accountholder, and such funds are specifically associated with an authorized and specific debit card transaction.

16.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

17.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has been reduced to account for earlier debit card transactions.  As a result, many subsequent authorized transactions incur OD Fees due to the unavailability of the funds that have already been sequestered for those specific debit card transactions.

18.     Still, despite keeping those held funds off-limits for other transactions, UCB improperly charges OD Fees on Authorize Positive, Settle Negative Transactions—the latter which always have sufficient available funds for payment.

19.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "deceptive" when:

> a financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore

concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing the fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

20. There is no justification for these practices, other than to maximize UCB's OD Fee revenue. Authorize Positive, Settle Negative Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But UCB is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and UCB does the latter to the tune of millions of dollars each year. But UCB was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on Authorize Positive, Settle Negative Transactions.

21. In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that UCB will make OD Fee determinations at the time debits are "requested" (which occurs immediately for debit card transactions); only charge OD fees on items that actually "overdraw your account"; and only charge OD Fees on debits "when you do not have enough money in your account to cover a transaction":

You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. . . . . We may use subsequent deposits, including direct

6

deposits of social security or other government benefits, to cover such overdrafts and overdraft fees.

* * *

An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. . . . We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. If we do not authorize and pay an overdraft your transaction will be declined.

(Exhibit 1, UCB's "Terms and Conditions of Your Account" ("Ex. 1"); Exhibit 2, UCB's "What You Need to Know About Overdrafts and Overdraft Fees" ("Ex. 2").) Those documents state that "[t]he maximum charge per day will be eight fees ($36 per fee)." (Ex. 2.)

22.     For Authorize Positive, Settle Negative Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to pay those transactions—yet UCB assesses OD Fees on them anyway.

23.     In short, UCB is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.     The Account Documents Fundamentally Misconstrue UCB's True Overdraft Fee and Debit Processing Practices**

24.     The Account Documents misconstrue UCB's true debit card processing and OD Fee practices in at least two ways.

25.     <u>First</u>, and most fundamentally, UCB charges OD Fees on debit card transactions for which there are sufficient available funds to pay the transactions. That is despite contractual representations that UCB will <u>only</u> charge OD Fees on transactions with insufficient available funds to pay a given transaction and that the bank will immediately deduct or place a hold on funds for such transactions.

26.     UCB assesses OD Fees on Authorize Positive, Settle Negative Transactions that <u>*do*</u> have sufficient available funds to pay them throughout their lifecycle.

27.     Those available funds are sequestered at the moment a debit card transaction is approved by UCB.

28.     UCB's practice of charging OD Fees even where sufficient available funds exist to pay a transaction violates a contractual promise not to do so. This discrepancy between UCB's actual practice and the contract causes consumers like Plaintiff to incur more OD Fees than they should.

29.     Sufficient funds for Authorize Positive, Settle Negative Transactions actually are debited from the account immediately, consistent with standard industry practice.

30.     Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what UCB does when it re-debits the account during a secret batch posting process.

31.     In reality, UCB's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and at the time of settlement.

32.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, UCB cannot then charge an OD Fee on such a transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

33.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, UCB does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, UCB releases the hold it had placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

34.     This secret step allows it to charge overdraft fees on transactions that never should have gotten them—transactions that were authorized into sufficient funds, and for which UCB specifically set aside money to pay them.

35.     This discrepancy between UCB's actual practices and the contract causes consumers to incur more OD Fees than they should.

36.     <u>Second</u>, the bank promises to make overdraft determinations only at the time it elects whether or not to pay an overdraft. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. According to the "must-pay" network rule, once UCB authorizes a debit card transaction, it has no choice but to pay it.  It cannot change its mind later.

37.     In short, UCB promises that it will make overdraft fee determinations at the time of authorization.  That means that Authorize Positive, Settle Negative Transactions rightly cannot incur overdraft fees.

38.     In sum, UCB's practices as described in the account documents presented to customers, like Plaintiff and the putative class members, are materially different than UCB's practices in reality. This results in direct harm to customers, like Plaintiff and putative class members, because they incur more overdraft fees than they are required to pay.

### C.     <u>Reasonable Consumers Understand Debit Card Transactions are Debited Immediately</u>

39.     The assessment of OD Fees on Authorize Positive, Settle Negative Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions.  That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of Authorize Positive, Settle Negative Transactions).  If funds are immediately debited, then, they are necessarily applied to the debit card transactions for which they are debited.

40.     UCB was and is aware that this is precisely how its accountholders reasonably understand debit card transactions to work.

41.     UCB well knows that many consumers prefer debit cards for these very reasons. Consumer research indicates that consumers prefer debit cards as a budgeting device; because

they don't allow debt like credit cards do; and because the money comes directly out of a checking account.

42.     Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear."[1]

43.     This is a large part of the reason that debit cards have risen in popularity.  The number of terminals that accept debit cards in the United States has increased by approximately 1.4 million in the last five years, and with that increasing ubiquity, consumers have (along with credit cards) viewed debit cards "as a more convenient option than refilling their wallets with cash from an ATM."[2]

44.     Not only have consumers increasingly substituted from cash to debit cards, but they believe that a debit cards purchase is the functional equivalent to a cash purchase, with the swipe of a card equating to handing over cash, permanently and irreversibly.

45.     UCB was aware of a consumer perception that debit transactions reduce an available balance *in a specified order*—namely, the order the transactions are actually initiated—and its account agreement only supports this perception.

### D.     Plaintiff Jones's Overdraft Fee Experience

46.     On April 27, 2017, and on other occasions, Plaintiff Jones was assessed OD Fees on debit card transactions that were, upon information and belief, initiated on or prior to each of those dates on sufficient funds.  In other words, UCB assessed Plaintiff Jones OD Fees on Authorized Positive, Settle Negative Transactions.

---

[1] *See* https://www.consumer-action.org/helpdesk/articles/ what_do_i_need_to_know_about_using_a_debit_card (last visited May 3, 2018).
[2] Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*, MARKETWATCH, Mar. 23, 2016, http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

47.     Plaintiff Jones disputes that UCB was authorized to charge OD Fees on the prior in time debit card transaction initiated on sufficient funds.

48.     UCB assessed OD Fees on the held transactions even though it had sequestered available funds for those transactions at the time they were authorized.

## II. UCB May Not Charge More Than One NSF Fee on a Single Transaction that is Submitted for Payment Multiple Times, and It May Not Charge Both OD and NSF Fees on a Single Transaction

49.     In addition to the problems with charging OD Fees on Authorize Positive, Settle Negative Transactions, Plaintiff Jones has suffered additional harm because of UCB's NSF Fee policies.

50.     Consistent with express representations in the contract, reasonable consumers understand any given instruction for payment to be one, singular transaction and one "item" as that term is used in UCB's contract documents.

51.     As discussed herein, the Bank has this same understanding in practice, since its systems code transactions in a way that alerts the Bank when the same item or transaction is being re-submitted for payment.

52.     The contract documents bar UCB from assessing multiple NSF Fees on the same item or transaction.

53.     First, the Online Banking Agreement provides UCB the authority to charge only one NSF or OD Fee per transaction. (Exhibit 3, UCB's "Terms and Conditions of Your Account" ("Ex. 3").) The Agreement does not state that such a single re-attempt will incur an additional NSF or OD Fee. (*Id.*)

54.     As alleged herein, Plaintiff only scheduled his payments or transfers <u>once</u>, and took no action to request re-processing of his transactions.  Because Plaintiff only scheduled a given debit once, UCB was only entitled to charge one OD or NSF on each debit. In other words, when a transaction is returned for insufficient funds, it cannot be the basis for another NSF or OD Fee without an additional action from the accountholder to again seek payment for the item.

55.     The contract's terms are starkly binary:  for a given transaction, the Bank may pay or return it, but it cannot do both for the same transaction, and it cannot do the same thing more than once.

56.     To the extent the account documents do not explicitly bar the polices described above, the Bank exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

57.     For the same reasons, the contract documents also bar UCB from assessing both NSF Fees and OD Fees on the same item or transaction.

58.     Take for example, Mr. Jones's March 2018 statement. UCB charged at least *three* $36 NSF Fees on the same $133 internet payday loan transactions, and also charged two OD Fees when it finally approved the debits from a payday lender. Mr. Jones was charged $468 in OD and NSF Fees by UCB that month, including $180 in NSF and OD Fees on the attempted payment and payment of the same payday loan transactions, in violation of its contract.

## CLASS ALLEGATIONS

59.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

60.     UCB's contract with all class members provides "[t]his agreement is subject to . . . the laws of the state of Georgia." (Ex. 1.) Accordingly, class-wide application of Georgia law is appropriate.

61.     The proposed classes are defined as:

> All UCB checking account holders who, within the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the "Authorize Positive, Settle Negative Class").

> All holders of a UCB checking account who, within the applicable statute of limitations, incurred multiple NSF Fees on the same transaction, or NSF and OD Fees on the same transaction (the "Multiple NSF Fee Class").

All of the classes are collectively referred to as the "Classes."

62.     Plaintiff brings this action on his own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.  Excluded from the class are UCB, its subsidiaries and affiliates, its officers, directors and member of their immediate families and any entity in which defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

63.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes if necessary before this Court determines whether certification is appropriate.

64.     This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

65.     *Numerosity under Fed. R. Civ. P. 23(a)(1)*.  The members of the Class are so numerous that separate joinder of each member is impracticable.  Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to UCB's records.  UCB has the administrative capability through its computer systems and other records to identify all members of the Class and the amount of OD Fees paid by each Class member, and such specific information is not otherwise available to Plaintiff.

66.     *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Classes relating to UCB's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members.  The common questions include, but are not limited to:

        a)      Whether UCB improperly charged overdraft fees on Authorize Positive, Settle Negative Transactions;

        b)      Whether UCB developed and engaged in an unlawful practices that mischaracterized or concealed its true overdraft and insufficient fund fee practices;

c)         Whether Plaintiff and other members of the Class have sustained damages as a result of UCB's assessment and collection of the OD Fees, and the proper measure of damages;

d)         Whether UCB assessed multiple NSF Fees for a single transaction; and

e)         Whether UCB was authorized to assess multiple NSF Fees for a single transaction.

67.     *Typicality under Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by UCB, as described herein.

68.     *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the Class in that he has an UCB checking account and has suffered damages as a result of UCB's assessment and collection of OD Fees. In addition:

a)         Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)         There is no hostility of interest between Plaintiff and the unnamed Class members;

c)         Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)         Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

69.     *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations (paragraph 65 and subparts) are restated and incorporated herein by reference.

70.     *Superiority under Fed. R. Civ. P. 23(b)(3).*  A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of UCB are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and UCB's misconduct will proceed without remedy.  In addition, even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)
### (On Behalf of the Authorize Positive, Settle Negative Class)

71.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

72.     Plaintiff and UCB have contracted for bank account deposit, checking, ATM, and debit card services, which provide that those contracts are "subject to . . . the laws of the state of Georgia." (Ex. 1.)

73.     UCB misconstrued in the account documents its true debit card processing and OD Fee practices and breached the express terms of the account documents.

74.     UCB breached promises included in the account documents.

75.     No contract provision authorizes UCB to charge OD Fees on Authorize Positive, Settle Negative Transactions. Rather, the contract only authorizes UCB to charge OD Fees on transactions for which sufficient funds did not exist at the time of authorization.

76.     Therefore, UCB breached the terms of its account documents by charging OD Fees on transactions that were authorized into a sufficient available balance, but whose available balances were allegedly insufficient at the time the transactions were settled.

77.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

78.     Plaintiff and members of the Classes have sustained damages as a result of UCB's breach of the contract.

## SECOND CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (On Behalf of the Classes)

79.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

80.     Plaintiff and UCB Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in contract documents, which provide that those contracts are "subject to . . . the laws of the state of Georgia." (Ex. 1.)

81.     Under the law of Georgia, good faith is an element of every contract pertaining to the assessment of OD Fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

83.     UCB has breached the covenant of good faith and fair dealing in the contract through its overdraft policies and practices as alleged herein.

84.     Specifically, UCB harms consumers by abusing its contractual discretion in a number of ways which no reasonable consumer would anticipate.

85.     UCB uses its contractual discretion to cause Authorize Positive, Settle Negative Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for Authorize Positive, Settle Negative Transactions.

86.     UCB uses this contractual discretion to extract OD Fees on transactions that no reasonable consumer would believe could cause OD Fees.

87.     UCB abuses its contractual discretion to charge multiple NSF Fees on the same transaction, and to charge both NSF and OD Fees on the same transaction..

88.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the account documents.

89.     Plaintiff and members of the Classes have sustained damages as a result of UCB's breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
**(Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq*.)**
**(On Behalf of the Classes)**

90.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

91.     UCB engaged in deceptive acts or practices relating to the imposition of OD Fees on consumers in violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* ("GFBPA").

92.     The express purpose of the GFBPA is to "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state" of Georgia. O.C.G.A. § 10-1-391.

93.     The GFBPA is to "be liberally construed and applied to promote its underlying purposes and policies." O.C.G.A. § 10-1-391.

94.     Plaintiff and class members are "consumers" within the meaning of O.C.G.A. § 10-1-392(6).

95.     Defendant was engaged in "consumer transactions" as defined by O.C.G.A. § 10-1-392(10).

96.     GFBPA declares unlawful "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393.

97.     UCB engaged in unfair or deceptive acts or practices or otherwise violated GFBPA by, *inter alia*, knowingly and intentionally employing an unfair and deceptive policy and practice of charging overdraft fees on transactions that were approved and authorized into a sufficient available balance, and misrepresenting and failing to disclose its policy and practice of charging overdraft fees on transactions that were approved and authorized into a sufficient available balance.

98.     UCB also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated GFBPA by, *inter alia*, abusing its discretion to interpret undefined terms in a manner harmful to consumers and beneficial to UCB.

99.     In addition, UCB engaged in unfair or deceptive acts or practices or otherwise violated GFBPA by, *inter alia*, by programming its "matrix" to maximize overdraft fee revenue at all costs, and to repeatedly authorize transactions that result in thousands of dollars of

overdraft fees each year, despite its representation to consumers that it would exercise discretion in determining when to charge OD Fees. UCB also failed to disclose to consumers that they could be subject to thousands of dollars in OD Fees annually.

100.    UCB intended that Plaintiff and members of the Classes rely on the acts of concealment and omissions, so that Plaintiff and the members of the Classes would continue to incur OD Fees.

101.    UCB's conduct caused Plaintiff and the members of the Classes to suffer ascertainable losses in the form of excessive OD Fees that, but for UCB's unfair and deceptive practices and policies described herein, would not have otherwise been imposed.

102.    Plaintiff and class members are entitled to damages, exemplary damages, declaratory relief, injunctive relief, and reasonable attorneys' fees, as permitted by law.

103.    A written pre-suit demand under O.C.G.A. § 10-1-399(b) is unnecessary and unwarranted because Defendant has had notice, or it should have had notice, of Plaintiff's and Class Members' allegations, claims, and demands. Further, Defendant is the party with the most knowledge of the underlying facts giving rise to the Plaintiff's and Class Members' allegations, so that any pre-suit notice would not put Defendant in a better position to evaluate those claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B.    Declaring that Defendant's OD Fee policies and practices to be wrongful, unfair, and unconscionable;

C.    Ordering UCB to immediately cease the wrongful conduct set forth above and enjoining UCB from continuing to charge overdraft fees on transactions that do not actually overdraw accounts and otherwise enjoining UCB from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.      Restitution of all OD Fees paid to UCB by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.      Actual and punitive damages in an amount to be determined at trial;

F.      Pre-judgment interest at the maximum rate permitted by applicable law;

G.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.      Granting such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  May 16, 2018

Respectfully submitted,

s/ Benjamin A. Gastel
J. Gerard Stranch, IV, BPR #23045
Benjamin A. Gastel, BPR #28699
BRANSTETTER, STRANCH
   & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

Irwin B. Levin (*pro hac* forthcoming)
Richard E. Shevitz (*pro hac* forthcoming)
Vess A. Miller (*pro hac* forthcoming)
Lynn A. Toops (*pro hac* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
rshevitz@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com
*Pro Hac Vice Motions to be Filed*

Jeffrey Kaliel (*pro hac* forthcoming)
Sophia Gold (*pro hac* forthcoming)
KALIEL PLLC
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com
*Pro Hac Vice Motions to be Filed*

Christopher D. Jennings (*pro hac* forthcoming)
THE JOHNSON FIRM
2226 Cottondale Lane, Suite 210
Little Rock, AR 72202
(501) 372-1300
chris@yourattorney.com
*Counsel for Plaintiff and the Proposed Classes*